Court. I'm Bob Miles representing Aloe Vera and the Mon plaintiffs in this action. You're trying to show abuse of discretion, right? Excuse me? You're trying to show abuse of discretion. Yes. Tough standard. It's a mighty steep hill to walk up. I understand, Your Honor. But in this case, there are no facts. Is this judge interpreting his own order and making a decision as to whether or not counsel have been defiant? That's a mighty steep hill to stomp. But go ahead. I agree, Your Honor. But on this record, that sanction order cannot stand because in concluding that bad faith was involved here, the court made three findings that simply are not supported by the facts in the record. Did your client do what it was ordered to do by the district court? I believe it did. You know, a yes is always better than I believe. Question is, did it do it? What did the district court order? Remind me. The court ordered, I guess it depends on where in the... You know, you've got limited time, you know, how specific would you like me... It ordered your client to either approve... It ordered our client to disclose the documents to the government. It ordered our... The specific language of the order was, plaintiffs shall obtain a written agreement from defendant that they will not disclose any of the information obtained from the sealed documents to any individual or entities who are not parties to this action. Earlier in the order, there is some language that talks about... Which order are you talking about? September 28th? September 28th order. September 28th, 2010 in the record. It ordered that the documents currently filed with the court shall remain sealed and no party may disclose them except for the government subject to the confidentiality, correct? Yes. So, not disclosing it to anybody except the government meant not disclosing it in a deposition? Well, Your Honor, I don't see how in a situation where the judge says himself that it is a legitimate issue that needs to be resolved in the protective order, how these documents will be used in discovery. When the order says in writing that the documents shall remain sealed and no party may disclose them except to the government, I don't know where there is room for interpretation, or at least where the district court abused its discretion by saying it left no room for interpretation. Your Honor, I think there was clearly room for interpretation here because not only did Aloe Vera propose a protective order that included a procedure for dealing with the documents and depositions, the government also proposed such an order, and even BNA in its revised protective order had a provision in there regarding how the documents would be used in depositions. And then the court says that's a legitimate issue that needs to be dealt with in the protective order. I think that's much room for interpretation of the order. Everybody below presented proposals as to how the documents would be dealt with in depositions, including BNA itself. And the judge then, when we're in front of him, says, yeah, we need to deal with that. He doesn't deal with it. He changes his mind and says, no, I'm not going to deal with it. But up to that point, he has said the documents are going to be offered at trial. He says that in the September 28th order. So if the documents are going to be offered at trial, certainly there needs to be some means of dealing with them during the discovery process, as everybody recognized, because everybody had a proposal on the subject. And so for ‑‑ So why isn't that a sufficient resolution? In other words, where the order says you may not disclose to anyone, period, and maybe we'll talk about depositions later, maybe we'll get another exception, but unless there's another exception, why isn't that just a flat out you can't do it? I guess, Your Honor, I don't see how, when the judge says it's legitimate, when the government does it and BNA does it, how it's a sanctionable conduct for Al Avera to do it, to make a proposal that is similar to the proposals everybody else was making and the judge has indicated is a legitimate issue to be resolved. It strikes me as an attempt by everyone to try and come to some understanding of how we're going to do this so we don't have to keep going back to the court. That was the effort that was trying to be made by the parties here. When the court has acknowledged in its order that, hey, these are going to be offered at trial, these documents are going to be offered at trial, surely they're going to have to be dealt with during the discovery process. Isn't there some way to order Al Avera to file a confidentiality agreement or notify the court that the government refused to do that? Yes, and that's where the mistake came in. Did you do either of those? We couldn't do either one of those because, at the time, the government had agreed to sign the agreement but hadn't yet signed the agreement. I gather what you are saying is no in a long ways. I'm saying no because there was an inability to do so. Did you do it or did you not do it? No, it was an inability to do what the court ordered, Your Honor, and the cases say if there's an inability to comply with the order, you can't be sanctioned for not complying with the order. But the problem is Al Avera believed that it provided the court with the document the government had agreed to sign. I'm sorry, I'm going to ask the question one more time. Did you do it or did you not do it? We did not because we could not, Your Honor. But only because. Did you do it or did you not do it? We did not advise the court that the government had signed an agreement. Because it didn't sign an agreement. Because it had not at that point even though it had agreed to do so. You had an alternative, which is to say the government refused to sign an agreement. Did you do that? No, the government had not refused to sign it. The government had agreed to sign it. As of that date, the government had not refused. It had agreed to sign a confidentiality agreement. Did you tell the court that? Mr. Roinscott believed the document had been sent to the court, the document that the government had agreed to sign the day before the 26th. The court didn't believe him. No, the court never says he didn't believe him. And his affidavit was uncontroverted. The court never says he didn't believe him. Is this the secretarial error? Yes, Your Honor. The letter, Mr. Roinscott's transmittal letter to the government. We've got a long line of cases that we don't buy into the secretarial error letter. It's usually someone's a little late on it. How does that save you here? It's not bad faith. You've got to have bad faith. Mr. Roinscott believed that the court had the agreement that the government had agreed to. Reckless disregard is considered bad faith in these circumstances. Isn't checking to make sure a temporary has done what you've asked a temporary to do, would that be considered reckless? I don't think so. I think at most that could be considered negligence. And recklessness by itself is not enough. There must also be improper purpose. There's got to be something more than just recklessness. There needs to be bad faith here. And in these circumstances, there just wasn't bad faith. I've made my time for rebuttal. Let me ask you a question. I'm just wondering why we're here. I know lawyers and most of the judges don't like jurisdiction issues. How did we get here? Has there been a final resolution below? Has it? No, there's a Rule 54B judgment, Your Honor, on this sanctions order. A Rule 54B based upon? The award of sanctions of $21,000. And so anytime there's a sanction, it's appealable? Not if there's not a Rule 54B judgment. OK. So you have a Rule 54B judgment? Yes, we do, Your Honor. OK. If that wasn't on blue one when you outlined your jurisdiction, that's why we're here. I apologize. I thought it was. Oops, it is here. It is here. It's my fault, not yours. May it please the Court. My name is David Bodney. With me is Peter Kozinets. We're from the law firm of Steptoe and Johnson in Phoenix, Arizona. We represent the interveners BNA and TMI. Your Honor, we believe the judgment below should be affirmed. We believe that is the case because if the inherent power of the judge or of the court means anything, it surely must mean that the court has the power to sanction a party who repeatedly disobeys court orders. Judge Kozinski, you asked a simple question. Did it do what it was ordered to do? The short, honest answer is no. And not only did Aloe Vera, the plaintiff here, not do what it was ordered to do once, it did not do what it was ordered to do repeatedly. The language of Judge Teelborg to the parties was mandatory. He spoke in the language of shall do. They say they couldn't do it. They couldn't say it was signed because it wasn't true. They also couldn't say the government refused to sign because that wasn't true either. They didn't refuse to sign. They just hadn't done it yet. Well, Your Honor, that... What do you think of that? Your Honor, I think that's insufficient to compel anything but an affirmance in this case. And I believe that because this conduct is... Well, what do you do? You get up to the deadline and neither of the alternatives that the judge gives you are literally true. It's not the case that the government signed it, for sure. And it's certainly not the case that the government refused to sign it. They've dragged their feet a little bit. They haven't done it as quickly as you'd like, but they haven't said we won't do it. You can't honestly do either. Are you compelled to lie to the court? No, Your Honor, but I think what Alivera was compelled to do was honor the court's directive, and that was the Alivera shall advise the court. The court wasn't looking for permutations on possibilities. Either tell us, tell me, Your Honor, whether you have signed the confidentiality agreement or whether it hasn't been signed. Produce it or tell me that it can't be produced. Instead, nothing was told to the court. But that's not the most egregious problem. You'd have to sort of read refused in sort of a broad sense as saying fail to do it, neglected to do it. Sort of a very broad reading of refused. Possible. And, Your Honor, the problem here is it was part and parcel of a kind of conduct. There was willful violation of a court order on September 28, 2001. So you said there were repeated instances. What's your telling me what the other instances are? Your Honor, first, this controversy stems from a contract, a confidential settlement agreement and a release that was entered into between Alivera and BNA. The parties agreed it should be kept in the strictest of confidentiality. Confidentiality was of the essence. And there was only a very narrow form of disclosure permitted to bankers, to auditors, to tax authorities, and the document could only be showed to those persons. And, in fact, Alivera had committed not to challenge this contract. Instead, it decides to seek money from the United States of America by saying the United States disclosed information improperly. And, consequently, this appellant was hell-bent on demonstrating that this contract it had entered into with BNA should now be overturned. It sought a free advisory opinion at every turn from Judge Teelburg to say that it was not obliged to honor that contract with BNA, that because it had brought a lawsuit against the United States for money damages, it was somehow free not merely to share this document by showing it to a very narrow category of persons who would agree not to show it to anyone else, but in the order they produced directly in response to your question, Your Honor, on September 28th, we argued this motion for protective order. They responded to Judge Teelburg who granted the motion for protective order in favor of Alivera by producing a proposed form of agreement that would have made this information available to virtually anyone, 10 categories of persons, including consultants to third parties and expert witnesses and so on. Directly on September 28th, in open court, Judge Teelburg said as follows, quote, prior to the court entering the protective order, the plaintiffs shall obtain a written agreement from defendant that they will not disclose any of the information obtained from the sealed documents to any individuals or entities. Such information shall be used only by the attorneys in the case. On the same day, he issued a written order to all parties that was similarly clear. It said on September 28th, pursuant to such confidentiality agreement, I'm quoting here, the defendant shall not be allowed to reveal such documents to anyone who is not an attorney for a party to this case. That's ER 110 in this record. So orally and in writing, using mandatory language, front and center in the order, Judge Teelburg says this is for attorney's eyes only. Now, the Bureau of National Affairs has been dragged into this litigation. It has been forced to file a petition to intervene. It has been subjected to submitting these confidential information under seal. Aloe Vera suggests that that information should be made publicly available because it shouldn't have been submitted to a federal judge under seal. We're required to file a motion for protective order. Judge Teelburg grants the motion to intervene. He grants the motion for protective order. He says only that a protective order shall be submitted by BNA that limits disclosure to attorneys for the parties and in response. Instead of getting quibbling over form or the sort of things lawyers feel obliged to do, Mr. Wainscott, on behalf of Aloe Vera plaintiffs, comes back and reinvents the wheel. He re-argues the issue. He re-litigates the case. He removes the language that says for attorney's eyes only and inserts a litany of 10 categories of persons who would be free to share this information in the course of litigation. Now, it's all well and good to say that they were confused. But on November 26, 2001, before any sanctions order was issued in this case, Judge Teelburg says to Mr. Wainscott for the Aloe Vera plaintiffs, I thought my order was pretty clear. My order, which limits it to attorneys. So really what we have here is a contract between the intervenors, BNA and Aloe Vera, entered in 1997. Two years later, Aloe Vera decides it wants to sue the United States of America for unlawful disclosures. It then notifies my client and says, remember that confidential settlement agreement? Well, we now feel that we're obliged to share it with a party who's not especially interested in seeing it anyway because we think it will help our case against the United States. What an irony that somehow the ends justify the means here. That where they believe the United States government has unlawfully disclosed information and they're entitled to collect large money damages from this country, they're somehow free now to abandon their commitments to Aloe Vera and to make available to a long list of people all this information. And they fight BNA at every twist and turn. Now, the Supreme Court in Chambers, this court in Fink v. Gomez has made it very clear, we're not talking about a requirement that a judge find subjective bad faith or objective bad faith or bad faith alone. Willful violation is enough. And my dog ate my homework excuse when it comes the third or fourth time after a federal district judge has said, thou shalt produce or thou shalt notify or the order shall say attorney's eyes only. And they keep trying to get another bite at the apple to advance their cause. A federal district judge has the inherent power to issue sanctions. Now, if this were a case where due process had been violated and they hadn't litigated and re-litigated this issue below, they filed a motion for reconsideration after Judge Teelburg issued sanctions, maybe there'd be something to talk about. If Judge Teelburg had issued a million dollars in damages or thrown out their case, maybe there'd be something to appeal. But here the judge had a very measured sanctions order. He said, I'm going to order half of the attorney's fees from October 19 forward for a period of about four to six weeks where this client who was dragged into this courthouse to defend a contract you were honor bound to uphold to do what I asked the parties to do and is forced to pay these fees, that isn't right. That isn't fair. And it's an exception to the American fee shifting rule that is well recognized by the court. And so, Your Honor, I appreciate the opportunity to be heard this morning. It's a privilege to be before you and we request that the order below be affirmed. Thank you. I believe you have the better part of two minutes left. Thank you, Your Honor. This started because Alavira believed under the rules it had to produce the documents to the government. The government asked for them? The government had asked for them and rule 26 provides that it needed to. And so Alavira wrote the BNA as the settlement agreement provided and said, we think we've got to produce these documents. If you disagree, the terms under the settlement agreement say you can go in and ask for a protective order. We went in on that basis and the court agreed with us and said these documents must be disclosed to the government. And so there was no violation of the settlement agreement. We did exactly what the settlement agreement said and the judge agreed that, yes, that's essentially an order. Those rules are essentially an order and you must produce them to the government. That's not a willful violation of any order. In fact, it's compliance with the orders. Mr. Bodney says that the order says we shall advise the court by October 26 of what the government is doing. Mr. Winscott believed he had advised the court of the status of the situation. Yes, we couldn't say they'd signed an agreement because they hadn't. Yes, we couldn't say they refused because they hadn't refused. And so what he thought was sent over to the court and to BNA was a status. Here is the document the government has agreed to sign. And this was October of 2001. And the mail was being held up and the processing of things in the U.S. Attorney's Office was being held up because it was after September 11th. And so even though the government had agreed the day before, they hadn't signed it by the 26th. I'm not sure they were even dragging their feet, quite frankly, Your Honor. Your time is up. I'm sorry. Let me ask you a question. We rule on this case by abuse of discretion. Is that what you have to demonstrate, that the trial court abused its discretion? Yes, Your Honor. I talked earlier, asked you about reckless annoying, and you felt that was not appropriate in the case. In our BKB case, our holding was here, regardless of whether defense counsel's behavior constituted bad faith per se, we readily find that counsel's reckless annoying conduct in this case was tantamount to bad faith and therefore sanctionable under the court's inherent power. I just wanted to give you a fair shot at that because you didn't feel that bad faith could be equated with reckless annoying. Assuming BKB is applicable, would your argument be any different? I believe that either Keenan or Yagman, which are cited in our briefs, say the contrary, that recklessness is not enough. But I would also say that what happened here was not reckless. At the most, it was negligent. And negligence is not enough for the imposition of sanctions. The cases that clearly say that. All right. Thank you. I just wanted to give you a chance at that. Thank you, Your Honor. The case is argued. We'll stand some minutes. Now, we'll hear arguments in Carr v. Providence-Life.
judges: Wallace, Kozinski, Graber